CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

EMILY R. DAHLKE (CABN 322196)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Emily.dahlke@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 4:25-mj-70771- MAG |
|     Plaintiff, | ) |
| | ) **UNITED STATES' MOTION FOR DETENTION** |
|   v. | ) |
| | ) Date:  July 10, 2025 |
| DAVID CLAYTON CONERLY | ) Time:  10:30 a.m. |
| a/k/a Arshay Pridgeon | ) Court:  Honorable Kandis A. Westmore |
| | ) |
|     Defendant. | ) |

UNITED STATES' DETENTION MEMORANDUM   1
4:25-mj-70771- MAG

# I.    **INTRODUCTION**

Just months after being released from a 108-month federal prison sentence, David Clayton Conerly ("Defendant") was arrested by the Berkely Police Department ("BPD") on February 5, 2025, for possessing a loaded firearm, among other state charges.  The firearm was recovered after he crashed his car into a number of parked vehicles on a residential street in Berkeley.  He fled the scene, lied about his involvement in the collision and refused to comply with commands from responding officers. He possessed nearly 100 grams of marijuana, various other substances, and a half-empty bottle of gin was recovered inside his vehicle.  His blood alcohol content was more than twice the legal limit and he tested positive for methamphetamine. At the time, he was less than 6-months into his term of supervised release.  Sadly, this conduct is not unusual for Defendant and mirrors behavior he has engaged in over and over throughout the years.  Review of the PSR from his 2018 federal conviction shows a pattern of criminal history beginning in 1994.  He has remained undeterred even after serving lengthy prison sentences, including a 10-year state prison sentence and the aforementioned 108-month federal prison sentence.  Defendant has repeatedly committed offenses while on probation.

In addition to the substantive charge alleged in the complaint, Defendant is also before the Court on a Form 12, which alleges a number of violations arising from his arrest on February 5, 2025. Defendant is a danger to the community and a risk of non-appearance.  He cannot meet his burden to show by clear and convincing evidence that he is not a danger or risk of non-appearance.  He must be detained.

# II.    **PROCEDURAL BACKGROUND**

On November 2018, Defendant was sentenced to 108-months imprisonment and 3-years of supervised release following his conviction for 18 U.S.C. section 922(g)(1) (Case # 4:17-cr-00578-JSW).  On July 18, 2024, he was released from BOP and his supervision commenced.  On February 5, 2025, Defendant was arrested by BPD for the conduct charged in the indictment.  He was charged by the Alameda County District Attorney's Office and has remained in continuous state custody since his arrest.  On February 5, 2025, a Form 12 warrant was issued, charging Defendant with violating various terms of his supervised release, related to his arrest.  On June 20, 2025, the Honorable Robert M. Illman authorized a complaint and arrest warrant, charging Defendant with being a felon in possession of a

firearm and ammunition.  Defendant is set for an initial appearance and arraignment on the complaint and Form 12 on June 10, 2025, before this Court.

### III.    LEGAL STANDARD

In supervised release violation cases, the defendant bears the burden of showing by clear and convincing evidence that he will not flee or pose a danger to the community. Fed.R.Crim.P. 32.1(a)(6). In determining whether a defendant should be detained, the "Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez,* 943 F.3d 1196, 1199 (9th Cir. 2019).  Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

### IV.    FACTUAL BACKGROUND

#### A.    Charged Conduct

On the morning of February 5, 2025, Defendant crashed his vehicle into a parked car on a residential street in Berkeley.  The crash was so significant that three cars were damaged, in addition to Defendant's.  Below is an image of Defendant's car at the scene of the crash.

Miraculously, Defendant did not kill himself or anyone else. Witnesses and victims came outside after hearing the crash and saw Defendant in and around the car, pulling items out and pacing around. He then left the scene. A witness called 911. BPD responded and saw Defendant walking a few blocks away from the scene. He was wearing a distinctive reflective vest. As BPD approached him, he ignored their commands to stop walking away. When they attempted to detain him, he resisted and swung at officers, causing one officer to suffer a contusion to his head. It took multiple BPD officers more than 30 seconds to detain Defendant.

After he was detained, Defendant told BPD and a paramedic that his name was "Michael White" and denied being involved in the collision. A wallet was recovered where Defendant was arrested and contained Defendant's ID card. When law enforcement confronted Defendant that his true identity was David Conerly and not Michael White, he responded "yeah".

The crashed vehicle was registered to Defendant. Inside the vehicle, under the front passenger seat, BPD found a loaded semi-automatic pistol, loaded with 10-rounds in the magazine and a round in

the chamber. The firearm was reported lost or stolen out of Stockton.





DNA testing was conducted on the firearm. The results showed very strong support that Defendant's DNA was on the firearm.

In addition to the firearm and ammunition, BPD also recovered the following either in the vehicle, person, or backpack of Defendant on the day of his arrest: a half-empty bottle of gin (Defendant's blood alcohol content was over two times the legal limit), a gray iPhone, hydrocodone pills, approximately 98 grams of marijuana, a working digital scale, cannabis edibles, 16 ounces of promethazine hydrocholoride, a cellophane bag containing a white powdery substance, and paperwork in Defendant's name in his crashed vehicle.

1

## V.    ARGUMENT

2

**A.    Defendant Cannot Show by Clear and Convincing Evidence He is Not a Public Safety Risk or Flight Risk**

3

4    Because Defendant is charged with violating the terms of his supervised release, he bears the

5    burden of showing by clear and convincing evidence that he is not a public safety risk or flight risk.

6    Fed.R.Crim.P. 32.1(a)(6).  He cannot.  Defendant's criminal history, the nature and circumstances of the

7    instant conduct, his demonstrated pattern of behavior while on supervised release and probation, and his

8    inability to follow Court orders, all weigh against his release.

9    **1.    Defendant's Criminal History Show he is a Public Safety Risk**

10    Defendant has criminal convictions from the following years: 1994; 1998; 2002 (16-month

11    prison sentence, multiple parole violations); 2003 (multiple probation violations culminating in

12    revocation of probation and a 10-year prison sentence); and 2010 (2-year prison sentence, multiple

13    parole violations).  He also suffered arrests that did not lead to convictions in the following years: 1999;

14    2001; 2003; three times in 2004; twice in 2011; 2012; three times in 2013; twice in 2015; and 2017.

15    Some of the arrests and convictions include conduct related to: drug sales, domestic violence, armed

16    robbery, burglary, and stolen vehicles.  Nearly all of the Defendant's arrests occurred in Berkeley and

17    many of them involve fleeing from police and/or resisting arrest.

18    Defendant has a nearly unbroken pattern of criminal conduct, save for periods of extended

19    incarcerations.  He persistently commits crimes, usually in Berkeley.  He will continue to do so if he is

20    released.  His most recent conduct very easily could have ended in tragedy – either to Defendant or

21    others.  His criminal history is greatly concerning and he will likely commit crimes if he is released.

22    **2.    Defendant's Prior 922(g)(1) Conviction in this District Weighs Against Release**

23    The facts underlying Defendant's recent prior conviction are disturbing – both because of the

24    conduct and because of the similarity to the facts in this case.  On November 2, 2017, BPD responded to

25    a 911 call.  The caller said Defendant, who was her ex-boyfriend, came to her residence and they got

26    into a verbal altercation.  Defendant then grabbed a baseball bat from the victim and hit her with it.

27    When officer's attempted to detain Defendant, he fled and failed to comply with orders.  Defendant

28    resisted arrest and was so combative, he had to be placed in a restraint.  He intentionally spat on an

UNITED STATES' DETENTION MEMORANDUM    6
4:25-mj-70771- MAG

officer, striking the officer's face and neck with his salvia.  During the arrest he told BPD officers "Fuck you bitch. I'll fuck you up", "Get off me mother fucker before I kill your ass"., and "fuck you, you bitch ass [n-word], I'm going to kill you bitch".  During the investigation, Defendant was found to possess the following: a Glock .40 caliber handgun with a 30-round capacity extended magazine; multiple rounds of .40 caliber ammunition; a half-empty bottle of liquor, cocaine base, and marijuana.

The fact that Defendant's current charge involves non-compliance with BPD, possession of a firearm and ammunition, illicit substances, and an arrest following dangerous behavior that could have hurt innocent people, is problematic.  Defendant will do as he has done in the past and engage in criminal behavior if released.

### 3.    Defendant's History While on Supervision

Defendant's history while on state and federal supervision is also concerning.  He committed the instant offense while on federal supervision and has a number of state parole or probation violations. In one state conviction, Defendant received a probation term with a 10-year suspended prison sentence.  Even with such a significant incentive to remain crime-free, he was unable to.  He violated his probation and was sentenced to 10-years state prison.  Similarly, here, instead of using the support and structure of supervised release and his probation officer as an opportunity to change decade-long patterns, he committed crimes and violated court-ordered conditions.  Defendant's violation of supervised release conditions is a serious breach of a court's trust.  This Court has no assurances that the Defendant will follow Court orders or imposed condition in this case.  In fact, the opposite is true – the Defendant has demonstrated that regardless of how serious the consequences are, he will break the law.

### 4.    The Consequences Defendant Faces Increase his Risk of Flight

The charges brought against Defendant are quite serious.  He is facing serious consequences for both the charged case and the supervised release violation, particularly considering he previously received a 108-month sentence for the same violation.  Additionally, the evidence against him is very strong.  *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cr. 1991) (strong evidence of guilt "makes it more likely that he will flee").  His history of attempting to avoid consequences by fleeing from police and failing to comply with supervision, also increases the risk that he will not appear if released.  All of these factors, when taken together, demonstrate that Defendant poses a risk of non-

UNITED STATES' DETENTION MEMORANDUM    7
4:25-mj-70771- MAG

appearance.

## VI.    **CONCLUSION**

Defendant cannot show by clear and convincing evidence that he is not a public safety risk or flight risk.  No condition or combination of conditions will reasonably assure the safety of the community or ensure his appearance at court proceedings.  The United States requests the Court order him detained pending trial.


DATED:  July 9, 2025                                    Respectfully submitted,

                                                       CRAIG H. MISSAKIAN
                                                       United States Attorney


                                                        */s/ Emily R. Dahlke*
                                                       EMILY R. DAHLKE
                                                       Assistant United States Attorney